IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Nicholas Hurshman, a minor child, et al., ) | Civil Action No.: 1:03-2643-RBH |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R** |
| Saint Mary Help of Christians Catholic ) | |
| School, et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the defendants' motion for a protective order (Doc. #52), which was filed on March 23, 2005, and defendants' motion to compel and for sanctions (Doc. # 53), which was filed on March 25, 2005. The Court heard oral arguments on this motion on April 13, 2005. At the hearing, the Court ordered Defendants to deliver a copy of the documents referenced to in the motion for a protective order, for an *in camera* examination in conjunction with the Court's consideration of the motion. The defendant has done so. Therefore, the Court will rule on the motions as follows:

## Background Facts

This matter is an alleged racial discrimination case arising out of a classroom teaching incident which occurred on August 27, 2001, at St. Mary's Help of Christians Catholic School in Aiken, South Carolina. St. Mary's is a Catholic elementary school that educates children from pre-school through the eighth grade. During the August of 2001 time frame, Mr. Nicholas Hurshman was in the seventh grade at the school. The basis of the claims in the case are that Plaintiff Nicholas Hurshman was allegedly labeled or described as a "Negroid" during a social studies class taught by Jean Cook. Plaintiffs also allege a series of teaching or disciplinary actions affecting Plaintiff Nicholas Hurshman

that were retaliatory in nature. The plaintiffs filed suit in State Court on September 6, 2002. They filed suit in this Court on August 18, 2003, alleging a violation of 42 U.S.C. § 1981 and various state law causes of action.

## Discussion

### A. Defendants' Motion for a Protective Order

The defendants filed a motion for a protective order regarding the plaintiff's Notice of Deposition of Paul Buceti. The plaintiffs seek to depose Mr. Buceti and seek the production of certain documents from Mr. Buceti. The defendants seek a protective order from this Court pursuant to Rule 26(b) and (c) and Rule 45(c) of the Federal Rules of Civil Procedure to prevent the plaintiffs from obtaining testimony by deposition or the production of any documents regarding Mr. Buceti's notes and reports provided to the defendants.

The defendants state that Mr. Buceti is a private investigator licensed to conduct private investigations by the South Carolina State Law Enforcement Division. The defendants state that Mr. Buceti has been identified as the outside, independent investigator by the Diocese of Charleston to conduct investigations of certain matters from time to time. The defendants state that Mr. Buceti was contacted by defense counsel and was employed by the Diocese beginning on September 10, 2001, to investigate the claims made by the plaintiffs Dennis and Regina Hurshman, regarding their son Nicholas Hurshman, against the defendants which are the subject of this lawsuit. The defendants state that in the course of his investigation, Mr. Buceti interviewed several individuals, including the plaintiffs. The defendants state that Mr. Buceti made known the results of his investigation to defense counsel, A. Peter Shahid, Jr. and Kenneth C. Krawcheck. The defendants state that Mr. Buceti also conducted other interviews of witnesses after a lawsuit was filed in the Aiken County Court of Common Pleas; and

subsequently, this lawsuit filed in the District Court.

The defendants state that Mr. Buceti conducted his investigation under the direction of defense counsel, A. Peter Shahid, Jr., for the sole purpose of investigating the claims of the plaintiffs. Defense counsel has also represented that Buceti has been his "right arm" in this case working under his direction. Therefore, the defendants seek to protect Mr. Buceti's notes, memorandums, oral and written reports, and from testifying on the basis that these materials are protected by the work product doctrine and/or are attorney-client material.

### I. Work Product Doctrine

Federal case law applying Rule 26(b)(3) of the Federal Rules of Civil Procedure defines the scope of the work product doctrine in this case.

The work product doctrine, as set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3) (emphasis added).

The Fourth Circuit Court of Appeals stated in National Union Fire Insurance Company of Pittsburgh, PA. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992), that "[i]n short, to

resolve whether Rule 26(b)(3) grants immunity from discovery, the district court must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or trial."

In this case, the defendants argue that all of Mr. Buceti's notes, memorandums, oral and written reports were prepared in anticipation of litigation. The defendants state that they were well aware that a potential claim could have been made by the plaintiffs when Mr. Keith Darr (St. Mary's Principal) had a meeting with Plaintiff Dennis Hurshman, in his office on August 29, 2001. However, after the meeting ended the defendants state that they believed the matter was resolved. Following the meeting, however, the defendants state that Mr. Darr received a phone call from a reporter on August 31, 2001, who was seeking input on the allegations made by the plaintiffs. Furthermore, the defendants state that the plaintiffs picketed the school on Friday, September 7, 2001. Shortly thereafter, on September 10, 2001, the defense counsel contends that he employed the services of Mr. Buceti, and did so anticipating litigation. Therefore, the defendants argue that any information and material obtained by Mr. Buceti was prepared in anticipation of litigation and should be afforded protection under the work product doctrine.

The plaintiffs argue that the materials are not protected because the investigation was conducted as a matter of course, not in anticipation of litigation. The plaintiffs state that the defendants have pointed to nothing in the record that suggests the threat of litigation was substantial and imminent or fairly foreseeable. The plaintiffs argue that the primary purpose of Mr. Buceti's investigation was to gather information for the Diocese to respond to the Hurshmans' complaints, not to defend against legal claims. The plaintiffs state that courts have held that investigative reports completed several days after an incident were internal reports prepared in the ordinary course of business, with the primary

motivation being the determination of what could be done to prevent a repetition of such an incident and a secondary motivation being the anticipation of potential litigation. See Stout v. Ill. Farmers Ins. Co., 150 F.R.D. 594 (S.D. Ind. 1993) (holding documents produced by insurer between date of loss and denial of fire claim, as part of investigation of claim, were not entitled to work product protection, in absence of identifiable resolve on part of insured during that period to litigate concerning claim).

The plaintiffs state that Bishop Baker revealed in his deposition testimony that the parties were attempting to resolve their differences between themselves when he stated: "[w]e tried to, as a Diocese, address the concerns of the Hurshmans about their son . . .. We tried to be sure he would have some counseling so that if anything that he felt in any way disrupted in his personal life could be rectified . . .." The plaintiffs point to the fact that they did not file a lawsuit regarding this incident until September 6, 2002. Furthermore, at the hearing on this motion, plaintiff's counsel indicated that a letter that was sent by the plaintiffs to the defendants on October 18, 2001, indicates that the plaintiffs were attempting to resolve the matter without litigation. The Court ordered the parties to provide a copy of the letter and such has been done.

After thoroughly considering the arguments of both parties and the circumstances surrounding this case and the documents, the Court finds that at the time the defendants hired Mr. Buceti, they could reasonably anticipate litigation. Shortly before Mr. Buceti was hired, the school principal was contacted by the media and Dennis and Regina Hurshman picketed the school. After considering such, the Court finds that it would be reasonable for the defendants to anticipate litigation at that time. Although reports compiled shortly after an incident have been held in some instances to be prepared in the ordinary course of business, the Court finds that such was not the case when Mr. Buceti was hired. In Mr. Buceti's affidavit, which was submitted to this Court along with the *in camera* documents, the affiant

states that he was contacted on September 10, 2001, by the defendants' attorney, A. Peter Shahid, Jr., and hired to investigate the validity of the plaintiff's claim. Furthermore, Mr. Buceti states that he reported the results of his interviews and any conclusions he may have reached to defense counsel. Likewise, the Court finds that the letter which the plaintiffs sent to the defendants on October 18, 2001, shortly after Mr. Buceti was hired, does not reveal that the plaintiffs were diligently attempting to resolve the matter without litigation. In fact, in the letter, the plaintiff's demanded among other things, a waiver of Nicholas Hurshman's tuition and a cash settlement of $500,000, supposedly in order to avoid litigation. As mentioned above, the Court finds that at the time the defendants hired Mr. Buceti they could anticipate litigation. Therefore, the Court finds that the documents in question were prepared in anticipation of litigation.

Under Rule 26(b)(3), once the Court has determined the documents have been prepared in "anticipation of litigation," the requesting party may still be entitled to the documents if they can show a "substantial need" for the materials, and the requesting party has been "unable without undue hardship to obtain the substantial equivalent of the material" by other means. However, even if the Court requires production of the materials , "the Court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party." This would include Mr. Buceti's mental impressions, conclusions or theories.

The Fourth Circuit went on to state in the National Union case that if the district court finds that documents are prepared in anticipation of litigation, then "if the documents embody opinions and theories about the litigation, discovery is refused without further inquiry. If opinions and theories about the litigation are only part of a document otherwise discoverable, the court may require production of a redacted copy. With regard to *other* documents falling within the scope of Rule 26(b)(3), the court

must determine whether the requesting party has a substantial need for them, taking into account their relevance and importance and the availability of the facts from other sources." National Union, 967 F.2d at 985.

The plaintiffs argue that they have a substantial need for Mr. Buceti's materials because many of the individuals whom they have deposed have repeatedly stated "I don't remember" in their depositions. The plaintiffs state that Mr. Buceti's notes will fill in the blanks. Plaintiffs argue that they are in substantial need of that information to fully and properly prepare their case, and they have no other way to gain it, and at the Court's request provided deposition excerpts of witnesses who testified they could not remember certain events. However, only two (2) witness' deposition excerpts were provided by the plaintiff.

After an *in camera* review of Mr. Buceti's entire file, the Court has considered the relevance and importance of the documents in the file to the issues in this litigation and the unavailability of the facts in the documents from other sources, and finds that the plaintiffs have shown a substantial need for some of the information contained in the file and undue hardship to obtain the information by other means. Therefore, the defendants are hereby **ORDERED** to produce the following materials contained in the file:

**Exhibit A** – The handwritten notes Mr. Buceti took based on his conversations with various individuals should be produced, but only to the extent not further limited by this ruling. Additionally, after reviewing the notes, the Court has not found that they contain any of Mr. Buceti's opinions or conclusions. However, if there is an opinion or conclusion contained in the notes, the defendants should contact the Court immediately about the possibility of redacting those portions.

**Exhibit B** – The typed version of the handwritten notes should also be produced, but only to the

extent not further limited by this ruling. Additionally, after reviewing the notes, the Court has not found that they contain any of Mr. Buceti's opinions or conclusions. However, if there is an opinion or conclusion contained in the notes, the defendants should contact the Court immediately about the possibility of redacting those portions.

To the extent that either **Exhibits A or B** include documents related to interviews with the Hurshmans by Mr. Buceti, such information should not be produced because there has been no showing of substantial need. Additionally, to the extent that **Exhibits A or B** contain notes of interviews with individuals that are not directly associated with the incident which occurred at St. Mary and which is the subject of this suit, such information should not be produced. The Court's substantial need finding above only relates to the incident which occurred at St. Mary. Also, any factual data, biographical information or research which is in **Exhibits A or B** that was compiled to assist the defense counsel in their defense of this case is protected by the work product doctrine and should not be produced. The Courts finding on the above restrictions of production is based upon the "anti-freeloader" rule which is designed to prohibit one adverse party from riding to court on the enterprise of the other. See National Union, 967 F.2d at 985.

**Exhibit D** – These are documents which were given to Mr. Buceti by A. Peter Shahid, Jr. during the course of his investigation. The documents are all factual information and should be produced.

After reviewing the remaining exhibits *in camera* **(Exhibits C, E-G)**, the Court finds that they are all documents and information which the plaintiffs either gave to Mr. Buceti or already have in their possession. Therefore, the Court will not require the defendants to produce those materials. However, the defendants are instructed to forward a copy of Mr. Buceti's affidavit to the plaintiffs, since no privilege log was produced as the Court required.

**II. Attorney-Client Privilege**

The defendants also argue that the documents contained in Mr. Buceti's file are protected by the attorney-client privilege. The United States Supreme Court held in <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981), that the attorney-client privilege is "the oldest of the privileges for confidential information known to the common law." The Supreme Court has long recognized that the attorney-client privilege merits special protection "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." <u>Id</u>. The Fourth Circuit Court of Appeals found in <u>In re Allen</u>, 106 F. 3d 582, 600 (4th Cir. 1997), "if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure."

The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." <u>Upjohn</u>, 449 U.S. at 390. The Fourth Circuit Court of Appeals stated in <u>Hanson v. United States Agency for International Development</u>, 372 F.3d 286, 292 (4th Cir. 2004), that:

> Courts have established rules as to when the attorney-client privilege may apply to multiple parties. Described as "'as an extension of the attorney client privilege,'" <u>United States v. Aramony</u>, 88 F.3d 1369, 1392 (4th Cir. 1996) (quoting <u>United States v. Schwimmer</u>, 892 F.2d 237, 243 (2d Cir. 1989)), the common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. <u>Sheet Metal Workers Int'l Ass'n v. Sweeney</u>, 29 F.3d 120, 124 (4th Cir. 1994); <u>see</u> <u>also</u> <u>Cavallaro v. United States</u>, 284 F.3d 236, 249-50 (1st Cir. 2002). In this context the communications between each of the clients and the attorney are privileged against third parties, and it unnecessary that there be actual litigation in progress for this privilege to apply. <u>Aramony</u>, 88 F.3d at 1392.

The party claiming privilege, and resisting discovery, has the burden of establishing the existence of privilege in all respects. <u>See</u>, <u>e.g.</u>, <u>Fisher v. United States</u>, 425 U.S. 391 (1976).

In this case, the defendants state that information obtained by Mr. Buceti from the defendants and other witnesses was obtained at the instruction and direction of defense counsel, A. Peter Shahid, Jr., and Kenneth C. Krawcheck, for the purpose of collecting information to prepare for a possible claim against these defendants. The defendants argue that the information obtained by Mr. Buceti would include statements made to him by the defendants named in this action. The defendants state that there has been no waiver of the information supplied by Mr. Buceti to third parties. Accordingly, the defendants argue that the information sought to be disclosed by the deposition or subpoena is protected by the attorney-client privilege.

The plaintiffs argue that Bishop Baker testified in his deposition that if he needs something that is of a serious nature checked out, he will call in Paul Buceti. Therefore, the plaintiffs allege that it was not defense counsel that contacted Mr. Buceti, but Bishop Baker instead. Thus, the plaintiffs argue that the requested testimony and materials are not privileged.

This Court is satisfied that in this case, Mr. Buceti was contacted by defense counsel and hired for the purpose of collecting information to prepare for a possible claim. Defense counsel has stated such and Mr. Buceti states in his affidavit that such is the case. Although the plaintiffs argue that Bishop Baker routinely contacts Mr. Buceti to investigate things of a serious nature, the testimony of Bishop Baker offered by the plaintiffs does not reveal that Bishop Baker stated he contacted Mr. Buceti in regards to this case. In fact, Mr. Buceti states in his affidavit that he reported the results of the interviews and any conclusions he may have reached to defense counsel and that he did not meet with Bishop Baker regarding this case or any of the materials until February 14, 2005, to prepare Bishop Baker for his deposition. After considering the parties arguments and the facts and circumstances surrounding this case, this Court finds that Mr. Buceti was contacted by defense counsel and employed

to obtain information from the parties and other witnesses in furtherance of the defendants' defense of claims made against them. Therefore, the Court finds that the information obtained from the named defendants by Mr. Buceti is protected by the attorney-client privilege. See In re Grand Jury Proceedings, 102 F.3d 748, 752 (4th Cir. 1996).

Therefore, the materials **ORDERED** produced above in **Exhibits A and B** are hereby limited to the notes of interviews of **non-party witnesses**. The notes of interviews with the defendants are protected by the attorney-client privilege. Furthermore, with regards to those non-party witness interviews, the defendants only have to respond and produce information as to those non-party witnesses who have information and knowledge of the incident which occurred at St. Mary and is the subject of this suit. Once again, the Courts finding on this further restriction of production is based upon the "anti-freeloader" rule which is designed to prohibit one adverse party from riding to court on the enterprise of the other. See National Union, 967 F.2d at 985.

To the extent that the plaintiffs still request the deposition of Mr. Buceti to inquire of his investigation and interviews in this matter, his testimony will be restricted to the findings of privilege consistent with this Order.

In summary, Mr. Buceti's testimony regarding his file and the production of his file are limited to the "non-party" witness interviews and they are allowed only to the extent that the "non-party" witness has information or involvement concerning the specific incident at St. Mary which is the subject of this lawsuit.

**B.  Defendants Motion to Compel and for Sanctions**

The defendants filed with this Court a motion to compel pursuant to Rule 37 of the Federal Rules of Civil Procedure seeking an Order from this Court to compel Dr. Michael Vasovski to appear

for the taking of is deposition. Further, the defendants seek an Order from this Court declaring Dr. Michael Vasovski to be in Contempt as provided in Rule 45(e) and imposing a penalty and/or sanctions this Court deems just and proper. Further, the defendants request that the Court require Dr. Vasovski to pay all attorneys fees as a result of having to file the motion.

The defendants have provided exhibits to this Court which show that the defendants served "Notice of Taking Deposition of Michael Vasovski" and a Subpoena *Duces Tecum* upon Dr. Michael Vasovski via Certified United States Mail on November 24, 2004. The deposition was scheduled for December 16, 2004, at 1:00 p.m., at the North Augusta Community Center, 495 Brookside Avenue, North Augusta, South Carolina, 29841. The witness did not appear for this deposition. The defendants declare that they attempted to schedule the deposition around the witness's schedule, but he refused to cooperate. Counsel for the defendants states that he contacted the witness's office two (2) hours prior to confirm his attendance. Defense counsel states that the witness, through an employee declared that he would not be appearing. At the hearing on these motions, counsel for the plaintiffs indicated that she also attempted to contact Dr. Vasovski on the date of his deposition to verify his attendance, but was unsuccessful in doing so.

Additionally, defense counsel served Dr. Vasovski via Certified United States Mail with the Notice of Hearing of the current motion before this Court on April 13, 2005. The letter enclosed to Dr. Vasovski indicated that the hearing was regarding his failure to appear at his deposition. The letter also informed Dr. Vasovski that at the hearing, the Court would hear the defendants' motion to compel and for contempt. The witness did not appear at the hearing before this Court.

For the above reasons, it is hereby **ORDERED** that the defendants' motion to compel is **GRANTED**. The Court will enter a separate Order commanding the witness to appear for a deposition.

The defendants motion for contempt is **DENIED** at this time.  However, if the witness fails to appear for the next scheduled deposition, the Court will entertain the motion for contempt once again.  Likewise, the defendants request for attorneys fees is also **DENIED**.

## Conclusion

For the reasons stated above, the defendants motion for a protective order (Doc. No. 52) is hereby **GRANTED** in part and **DENIED** in part.  Likewise, the defendants motion to Compel and for sanctions (Doc. No. 53) is **GRANTED** in part and **DENIED** in part.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
May 12, 2005